FILED

2010 Aug-04  PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ROGER AARON and RICHARD ESTIS,  ] | |
| ] | |
| Plaintiffs,  ] | |
| ] | |
| vs.  ] | 7:09-CV-00641-LSC |
| ] | |
| ARVINMERITOR, INC. AND  ] | |
| ARVINMERITOR, INC. SEPARATION  ] | |
| PAY PLAN,  ] | |
| ] | |
| Defendants.  ] | |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration motions for summary judgment filed
by the parties.  Plaintiffs Roger Aaron and Richard Estis ("Aaron," "Estis,"
or "Plaintiffs") have filed two motions for summary judgment on Counts I,
II, and IV of their Amended Complaint.  (Docs. 31 & 33.)  Arvinmeritor, Inc.
and Arvinmeritor, Inc. Separation Pay Plan ("Arvinmeritor" or "Defendants")
have filed a motion for summary judgment as to all claims.  (Doc. 35.)

Plaintiffs filed their Complaint in this Court on March 31, 2009 (Doc.
1), alleging that Arvinmeritor violated the Employee Retirement Income

Security Act ("ERISA") by refusing to pay separation pay to Plaintiffs when the division for which they worked was sold to another company.  Plaintiffs further allege that Defendants failed to provide ERISA plan documents within a reasonable time following Plaintiffs' document request.  (Doc. 1.) In the alternative, Plaintiffs allege that Arvinmeritor violated its fiduciary duty by misleading Plaintiffs regarding their rights under the company's separation agreement.  *Id.*  Plaintiffs amended their complaint on October 7, 2009, to allege breach of contract in the event that ERISA does not cover the separation plan.  (Doc. 15.)  Defendants argue that ERISA does not govern this matter and that, since Plaintiffs suffered no period of unemployment and in fact remained in the same position, albeit for a different employer, summary judgment should be granted in Arvinmeritor's favor.  (Doc. 35.)

The issues raised in the motion for summary judgment have been briefed by the parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendants' motion will be

GRANTED in part and DENIED in part.  Plaintiffs' motions are also GRANTED in part and DENIED in part.[1]

II.    Facts.[2]

Aaron and Estis began work for the emissions division of Arvin Industries, Inc. at its Fayette, Alabama plant in 1973.  Both are residents of Fayette County, Alabama.  On July 7, 2000, Arvin Industries and Meritor Automotive, Inc. merged to form ArvinMeritor, Inc.  Aaron and Estis continued on with the new company, maintaining their positions and receiving full credit for their years of service with Arvin Industries, Inc.

In 2001, ArvinMeritor decided to close the Fayette plant.  Plaintiffs were asked to continue working for the company until the closing was complete.  Plaintiffs agreed, signing a letter of agreement dated August 30,

---

[1] As the Court finds that the separation agreement is governed by ERISA, Plaintiffs' state law claims are preempted.  The Court notes, however, that even if this matter were not governed by ERISA, it appears Plaintiffs would also succeed under their breach of contract theory.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2001.  This agreement provided for retention payments and separation pay terms.  Arvinmeritor officials also signed the agreement.  The agreement contained Arvinmeritor's 2000 separation pay policy.  This policy reads in pertinent part,

Eligibility Requirements

To be eligible for separation allowance, the individual must be a full-time, non-union salaried employee with at least six (6) months of continuous service as of the date of separation.

Termination due to voluntary resignation or discharge for cause disqualifies an employee from receiving a separation allowance.

An employee who, as a result of reduction in force or inability to satisfactorily perform his/her assigned duties, is assigned to another position, but who resigns rather than accepts the reassignment will be eligible to receive a separation allowance if:

- The reassignment is to another salaried position that results in a reduction in his/her salary to less than 80% of the base salary s/he was receiving immediately prior to the reassignment.

- The reassignment is to an hourly rated position paying a base hourly rate (computed on a monthly base) of less than 80% of the base salary s/he was receiving immediately prior to the reassignment.

- the reassignment is to a different geographic location.

The 2000 separation pay policy provided for periodic payments based on the employee's "Base Monthly Salary" at the time of termination. Overtime earnings, bonuses, or other supplemental compensation were not considered in calculating the separation allowance.  Plaintiffs continued working at the Fayette plant after it closed in June 2002 and until all desired equipment was removed.  After closing the plant, ArvinMeritor asked certain employees, including Plaintiffs, to continue working out of an office in Tuscaloosa, Alabama.  While this office was the new work location, frequent travel was involved in Plaintiffs' new position.

When the Tuscaloosa office was opened, John "Todd" Morgan, Plaintiffs' supervisor, told Plaintiffs and others that they would not receive severance pay as a result of the closing of the Fayette muffler plant at that time, but if they were subsequently laid off they would receive severance pay.  Plaintiffs continued to work out of the Tuscaloosa office while employed by ArvinMeritor until 2007.

In early 2007, Plaintiffs were informed that the Tuscaloosa office was to be closed, and the division in which they worked, the Exhaust Division, was to be sold to another company.  In April 2007, Aaron repeatedly

requested separation pay, prior to the sale of the division.  ArvinMeritor declined to provide separation pay to Aaron or Estis.  Plaintiffs continued their employment with ArvinMeritor.

On May 17, 2007, Aaron and Estis began working with EMCON Technologies, the purchasor of the exhaust division.  ArvinMeritor neither owns nor operates EMCON Technologies, Newco, or Emcon Technologies Holdings Limited, all of which are separate companies.  No one worked out of the Tuscaloosa office for ArvinMeritor after July 2007.  The lease on the Tuscaloosa office for ArvinMeritor expired as of July 2007 and was not renewed.  ArvinMeritor has not paid separation pay to Plaintiffs.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party." *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV.   Analysis.

    A.   The Agreement between the parties created an ERISA plan entitling Plaintiffs to benefits.

The parties dispute whether the separation agreement in question created an employee benefits plan governed by ERISA.  The Eleventh Circuit has held that an ERISA plan is established in the event that "a reasonable

person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991).  It is well-established that a severance plan may fall within ERISA under certain circumstances.  The Supreme Court in *Massachusetts v. Morash* noted, "The distinguishing feature of most of these benefits is that they accumulate over a period of time and are payable only upon the occurrence of a contingency outside of the control of the employee.  Thus, for example, plans to pay employees severance benefits, which are payable only upon termination of employment, are employee welfare benefit plans within the meaning of the Act."  490 U.S. 107, 115-16 (1989) (citations omitted).  *See also, Adams v. Thiokol Corp.*, 231 F.3d 837, 840 n.4 (11th Cir. 2000) ("[A] severance pay plan is an employee welfare benefit plan, as defined under ERISA.").  A separation plan may not constitute an ERISA plan if it requires no administration whatsoever. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987) ("The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay

benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control.")

The Court concludes that the separation agreement between Plaintiffs and ArvinMeritor qualifies as an ERISA plan.  The benefits are readily deducible, including separation pay, earned vacation pay, and "all employee benefits for which a recipient is normally eligible."  (Doc. 37, Ex. A at 153-156.)  The class of employees is defined as "full time, non-union salaried employee[s] with at least six (6) months of continuous service as of the date of separation."  *Id.* at 153.  The funding is to come in the form of a "regular payroll check and increments in accordance with the local pay period practice," making it clear that the source of the funding is to be the company's general assets.  *Id.* at 155.  And finally, any reasonable person would have recognized that the procedure for receiving benefits was to contact the local Human Resources representative whose job it is "to ensure that the provisions of this policy are understood by management and applied where applicable."  *Id.* at 153.

Furthermore, the separation agreement in question is not one that provides a "one-time, lump-sum payment triggered by a single event" as in

*Fort Halifax Packing Company.*  For instance, the plan provides two separate paths to benefits.  The first is termination not due to voluntary resignation or discharge.  (Doc. 37, Ex. A at 153.)  The second path consists of a three-pronged exceptions test for employees who voluntarily resign.  *Id.* at 154.  Moreover, the severance package is not paid in a lump sum, but rather as a regular payroll check.  *Id.* at 155.  Earned vacation is also compensated "prior to and in addition to the separation allowance."  *Id.* at 154.  Furthermore, with the exception of salary continuance and short-term and long-term disability, employee benefits are continued throughout the period of separation, with the employee contributions required by those benefits continued as well.  *Id.* at 154-55.  Obviously, the separation plan envisions more than a mere lump sum payment and is covered by ERISA.

It is undisputed that Plaintiffs are covered by the separation agreement.   Richard Greb, Vice President of Compensation and Benefits, testified that Plaintiffs "would meet the criteria."  (Doc. 37, Ex. C, Greb Depo. at 20:7-8.)  Defendants maintain, however, that Plaintiffs were never separated.   Thus, "[s]ince they were not separated, they wouldn't be eligible for an allowance."  *Id.* at 20:9-10.  Plaintiffs eligibility for

separation benefits therefore turns on whether or not the selling of ArvinMeritor's exhaust division constitutes a separation from ArvinMeritor. Eleventh Circuit precedent indicates that it does.

Plaintiffs and Defendants both present common sense arguments to support their position. Both parties agree that Plaintiffs no longer work for ArvinMeritor. *Id*. at 20:14-16; 22:10-13; 23:2-11; 24:18-25:5. Plaintiffs argue that, as they are no longer employed by ArvinMeritor, they have separated from that company and are owed benefits. Defendants have pointed this Court to Eleventh Circuit opinions noting,

> When terminated employees are immediately rehired by a departing employer's successor under terms that are comparable to those received from their initial employer, the employees are not entitled to severance benefits. . . . Any severance pay from Thiokol would have been the equivalent of a windfall recovery for the Plaintiffs, who never suffered a day of decreased pay or unemployment.

*Adams v. Thiokol Corp.*, 231 F.3d 837, 846 (11th Cir. 2000) (citations omitted). In *Thiokol*, however, the severance plan in question "excluded severance benefits for . . . the sale of all or part of the business assets of the Company" where the acquiring company offered the employee a position. *Id*. at 840-41. *Thiokol* explicitly distinguishes other cases allowing

for separation benefits in such circumstances, noting that "the termination benefits policy [in those cases] had no exception to severance pay eligibility based on a sale or reorganization where the employees remained in comparable positions." *Id*. at 846 n.11.

The separation plan at issue in this matter contains no explicit exclusion for benefits in the event of a sale of company assets. The Eleventh Circuit has rejected Defendants' argument in cases with similar facts. In *Yochum v. Barnett*, the court stated, "The district court also determined that payment of severance benefits would constitute a windfall to Mr. Yochum, as he was never unemployed. This, however, is contrary to Eleventh Circuit precedent." 234 F.3d 541, 546 n.8 (11th Cir. 2000). Those precedents state,

> Federal courts have established no hard and fast rule that an individual must suffer a period of unemployment to qualify for severance benefits under ERISA. Those courts that have deemed unemployment a prerequisite to such benefits have predicated their decisions on the particular terms of the ERISA plan at issue and its application to the specific facts before them.

*Bedinghaus v. Modern Graphic Arts*, 15 F.3d 1027, 1032 (11th Cir. 1994).

Plans such as the one at issue in this matter have been interpreted to

convey benefits to employees separated from a company as a result of a transfer of assets, even if the employees in question keep their jobs.  The *Bedinghaus* court held,

> Clearly, 'the company' refers to the Times and its affiliates, *not* to some entity that happens to purchase the assets of one of the affiliates.  We see no ambiguity in the crucial terms.  Applying the plain and natural meaning of the provisions discussed above, plaintiffs were entitled to severance pay when their employment with MGA was terminated, regardless of whether they were employed by the entity that purchased MGA's assets.

*Id.* at 1030 (emphasis in original).  In *Anderson v. Ciba-Geigy Corporation*, the court stated,

> The sale of REN terminated the employer-employee relationship between the Ciba-Geigy plaintiffs. Termination may have been one of 'form not substance,' but it is clear that the 'form' of termination is the controlling factor under Ciba-Geigy's own definition of the word.  The Plan never specified a period of unemployment as a condition precedent to receiving severance pay benefits.

*Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1521 (11th Cir. 1985).  The court concluded, "Plaintiffs were 'terminated' for severance pay purposes." *Id.*

Given that the separation plan in question does not exclude instances in which employees are terminated from employment with ArvinMeritor due

to a sale of assets, it is evident that under Eleventh Circuit precedent,

Plaintiffs are entitled to separation benefits.  Plaintiffs no longer work for

ArvinMeritor.  (Doc. 37, Ex. C, Greb Depo. at 20:14-16.)  Greb testified that

separation occurs when "the organization takes action to end [an

employee's] employment."  *Id.* at 21:21-23.  ArvinMeritor took that action

when it sold Plaintiffs' division to an unrelated company.  If Defendants had

intended to require unemployment as a condition of separation benefits,

they could have done so.  In fact, the separation pay policy put in effect on

February 1, 2007[3], provides for this very circumstance.  The new policy

includes a Mitigation section stating,

> Employees receiving separation pay and other benefits under
> this policy understand and agree that they are under a
> continuing obligation to use their best efforts to regain
> employment to mitigate the expenses incurred by ArvinMeritor,
> pursuant to this policy.   Upon securing employment, all
> remaining payments and other benefits due under this policy
> shall cease, provided however, in no event will a separated
> employee executing a release in favor of ArvinMeritor, receive
> less than 4 weeks separation pay and other benefits.  (Doc. 37,

---

[3] The parties are somewhat vague about what effect they believe the 2007 policy
has on this matter.  ArvinMeritor, however, has admitted that "the amount of separation
pay, if any, due under the plaintiffs' retention agreements would have been determined
in accordance with the 2000 Separation Pay Policy attached to the retention agreements
of the plaintiffs."  (Doc. 40 at 4.)

Ex. C at 186.)

Under this policy, Plaintiffs would be entitled to four weeks of separation pay, even if they were employed and even if such a payment would represent a windfall.  And yet ArvinMeritor argues that Plaintiffs are due no separation pay under the 2000 policy, even though it contains no mitigation policy at all.  Both parties are bound by the agreements they made, and ArvinMeritor owes Plaintiffs the separation pay they are due.

Finally, Defendants argue that, even if the decision to deny Plaintiffs their separation pay was incorrect, this Court should not disturb that decision unless it was unreasonable.  In *Ciba-Geigy Corporation*, the court found that, since the decision to deny benefits, while wrong, was not arbitrary and capricious, plaintiffs in that case were not entitled to separation pay.  759 F.2d at 1522.  The arbitrary and capricious standard, however, does not always apply.

The Eleventh Circuit has established a six-step analysis designed to guide district courts in reviewing an administrator's benefits decision:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not,

then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is 'de novo wrong,' then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there  is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.  *Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1356 (11th Cir. 2008).

The sixth step of the analysis has been abrogated, and the district courts are now directed that "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious."  *Herman v. Metro. Life Ins. Co.*, 689 F. Supp. 2d 1316, 1324

(M.D. Fla. 2009) (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

Applying the analysis to this matter, the first step is met.  As detailed above, Defendants were wrong to deny Plaintiffs separation pay.  The Court need go no further than the second step, as the separation plan itself does not give the plan administrator the kind of discretion required to move to step three.  The plan itself sets forth the standards for separation.  It reads, "To be eligible for separation allowance, the individual must be a full-time, non-union salaried employee with at least (6) months of continuous service as of the date of separation."  (Doc. 37, Ex. A at 153.)  The administrator is not given discretion as to whether to grant separation pay, but rather is charged with ensuring the plan is "applied where applicable."  *Id.*  If an employee meets the criteria, he receives pay.  This language is much different than in *Ciba-Geigy Corporation*.  In that case, the plan included an exception providing, "[T]his policy shall not be applicable in any special situation (such as the relocation of a major operating unit) where the Corporate Management Committee deems it necessary to establish a separate policy applicable to that situation only."  759 F.2d at 1520.  The

Corporate Management Committee determined that the sale of a division was such a special situation and denied benefits.  No such discretion is granted in the separation plan before this Court.  The facts of this case are more akin to *Bedinghaus*, in which the Eleventh Circuit applied the de novo standard and awarded separation benefits.  15 F.3d at 1032-33.  Since the plan in question does not give the administrator the authority to determine eligibility for benefits or construe the terms of the plan, the decision to deny separation pay to Plaintiffs is not owed deference.[4]   Summary judgment is due to be GRANTED to Plaintiffs.

      B.    Statutory penalties are not appropriate in this instance.

In addition to benefits owed them under the separation agreement, Plaintiffs also seek statutory penalties under 29 U.S.C. § 1132(c) for failure to provide to them a copy of the plan documents, contracts, and instruments when requested.  Prejudice is not a requirement for the awarding of civil penalties.  *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993).  In fact, "the penalty range of up to $100 per day is

---

[4] Even if the standard remained arbitrary and capricious, Defendants' position that a separation did not occur when Plaintiffs ceased to work for the company is baseless and contrary to the plain and unambiguous wording of the separation agreement.

unrelated to any injury suffered by the plan participant, suggesting that section 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant." *Id.* Nevertheless, the decision as to whether to award penalties under 1132(c) is left to the "discretion of the trial judge" who "may undoubtedly consider whether a denial of information prejudiced a plaintiff." *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 847 (11th Cir. 1990).

Plaintiffs sent a number of requests for documents related to Arvinmeritor's separation plan and the decision to deny Plaintiffs pay. Defendants did not respond. Defendants admit that there is "no dispute that letters were sent by an attorney for the plaintiffs regarding 'severance package' and that he received no response." (Doc. 40 at 29.) While Defendants probably should have responded to Plaintiffs requests, it seems that no damage was done as Plaintiffs appear to have possessed all of the relevant documentation. They received the separation pay policy with their retention agreement in 2001. It is unclear what further documentation could have been provided by Defendants. Furthermore, while the Court has

determined that the separation agreement does constitute an ERISA plan, it is certainly not typical of the type of plan normally covered by ERISA.  It is thus understandable why Defendants failed to respond as they might in a more conventional ERISA action.  In any event, the documentation that Plaintiffs do possess has been sufficient to prosecute their case, and the Court does not believe statutory penalties are warranted.  Therefore, as to the statutory penalty claim, Defendants' motion for summary judgment is GRANTED and Plaintiffs' is DENIED.

V.   Conclusion.

For the reasons stated above,  Defendants' motion will be GRANTED in part and DENIED in part.  Plaintiffs' motions are also GRANTED in part and DENIED in part.  A separate order in conformity with this opinion will be entered.

Done this 4th day of August 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671